UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GOH, M.D.,<br><br>**Plaintiff,**<br><br>v.<br><br>THE DEPARTMENT OF THE AIR FORCE; DEBORAH LEE JAMES, in her official capacity as SECRETARY OF THE AIR FORCE; DOES 1-25,<br><br>**Defendants.** | 1:14-cv-00315 LJO SKO<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR JUDICIAL REVIEW (Doc. 33)** |

## I. INTRODUCTION

Plaintiff Robert Goh is doctor who was employed by the Veterans' Administration (VA), but worked in a hospital operated by the United States Air Force. Dr. Goh was accused of misdiagnosing a heart attack, and his records were reviewed, resulting in a restriction of his hospital privileges. Dr. Goh contends that the Air Force unjustifiably restricted his privileges at the hospital. He seeks a review of this decision under the Administrative Procedure Act (APA).

## II. LEGAL BACKGROUND

The protocol the Air Force followed when it evaluated the charges against Plaintiff is described in Air Force Instruction 44-119. AR 00001-244. When a provider's (such as a physician's) "conduct, condition, or performance requires immediate action to the protect the safety of patients or the integrity of the [Air Force Medical Service] . . .," the provider is removed from duties pending an investigation. AR 00134. The first step in this process is that the facility's Credential Function Chairperson or Medical Treatment Facility Commander (MTF/CC) issues a 30-day abeyance during which the physician may not treat patients. AR 00135. If the investigation takes longer than 30 days, the abeyance becomes a "summary suspension." *Id.* The MTF/CC appoints one or more peer officers to determine "if there are

1

clinical practice deficits that are or may affect patient safety." *Id.* The investigating officers send a report of their findings to the Credential Function Chairperson. *Id.* "The report should organize the factual findings of the inquiry, and include the investigating officer's conclusions or recommendations." AR 00135-36. A Credentials Function, consisting of three privileged providers meets to evaluate the inquiry report. AR 00137. At least one member of the Credentials Function must be a peer, meaning they have a similar Air Force specialty code, background, rank, grade, and years of professional experience. *Id.* The Credentials Function then makes recommendations to the MTF/CC and Credentials Function Chairperson regarding the provider's clinical privileges. AR 00138. The MTF/CC decides whether to reinstate, restrict, reduce, or revoke the provider's privileges. AR 00138-39. The MTF/CC must give written notification to the provider of the intent to take action and must identify "the reasons for the action *to include all specified allegations.*" AR 00139 (emphasis in original).

If a provider's privileges are denied, reduced, restricted, or revoked, the provider is entitled to a hearing. AR 00139. The provider has a right to hire an attorney, to present evidence and call witnesses. AR 00140. The Air Force must disclose its witnesses to the provider prior to the hearing and allow its witnesses to be cross-examined. *Id.* The Credentials Function Chairperson appoints a hearing panel consisting of three privileged providers, including one person who is a peer of the provider. *Id.* The hearing panel may not include officers involved in the earlier review. *Id.* The most senior member of the panel acts as its chair. A legal advisor is also present to rule on procedural matters. AR 00141. The hearing is not constrained by formal evidentiary rules. *Id.* The hearing panel weighs the evidence and makes recommendations as to whether clinical privileges should be reinstated, restricted, reduced or revoked. *Id.* "The recommended action must be made by majority vote and in good faith, is required to be based upon prevailing professional standards and on findings and conclusions from the evidence." AR 00142. Factual findings must be supported by a preponderance of the evidence. AR 00142. The Air Force defines this term as meaning "the greater weight of credible evidence or that the factual allegation by the Medical Group is more likely than not true." *Id.* The panel has up to 20 days from the date of the

hearing to complete their written recommendations. *Id.* Upon review of the panel's recommendations, the provider may submit a written statement of exceptions and corrections. AR 00143. The MTF/CC reviews the recommendations and the evidence and makes a final decision as to the provider's privileges. *Id.* The MTF/CC is not bound by the panel's recommendations. *Id.* the MTF/CC must provide written notification of the final decision and provide reasons for the final action. *Id.*

Providers may appeal the MTF/CC's final decision in writing to the Air Force Surgeon General (AF/SG). *Id.* A legal advisor reviews the administrative and due process aspects of the case. AR 00144. An "expert" peer reviews the clinical evidence. *Id.* The legal advisor and peer reviewer present their findings to the Medical Practice Review Board (MPRB). *Id.* The MPRB reviews these findings and makes a final action recommendation to the AF/SG. *Id.* The AF/SG makes the final decision as to whether a provider's privileges will be affected. *Id.*

### III. **FACTUAL BACKGROUND**[1]

Plaintiff was employed by the VA, but worked and held privileges at the Mike O'Callaghan Air Force hospital in Las Vegas, Nevada (The Hospital).[2] JSR ¶ 4(a). On March 7, 2011, the Air Force notified Plaintiff by letter that his hospital privileges would be held in abeyance pending an inquiry and review of his records. AR 00245-46. The letter explains that this action was taken "in response to a report of concern over quality of care and patient safety specifically the discharge from the emergency department of a patient having a myocardial infarction without diagnosing or addressing this concern." *Id.* at 00245.

Plaintiff resigned his position with the VA on March 10, 2011. AR 01275. Subsequently, Major Jason Tyler performed a review of 74 of Plaintiff's medical records and found 15 records that demonstrated "significant discrepancies ranging from lack of adequate documentation to failure to meet

---

[1] Facts are taken from the Administrative Record and the stipulated facts identified in the Joint Status Report (JSR), Doc. 29.

[2] The Parties do not dispute that venue lies in this jurisdiction pursuant to 28 U.S.C. § 1391(e)(1). Plaintiff is a resident of Fresno County and no real estate is involved in this dispute. SAC ¶ 21.

standard of care." AR 00248 ¶ 3. Based on these findings, a Credentials Function met on June 15, 2011 and proposed unanimously to restrict Plaintiff's hospital privileges such that he would require supervision for the his next 360 patient interactions and have his charts reviewed for the subsequent 360 patient interactions. *Id.* ¶ 4. The committee also decided that before it would recommend implementation of this decision, it would review additional records taken from 13 days of patient interactions. *Id.* ¶ 5. The MF/CC approved this course of action. *Id.* The Credentials Function, now consisting of the chairperson, six voting members and two non-voting advisors subsequently reviewed an additional 102 of Plaintiff's records. AR 00260. The Credentials Function found "discrepancies" in 22 of these records, and that 13 these demonstrated a failure to meet the standard of care. AR 00252. Plaintiff was notified of these "discrepant" records in a letter dated July 15, 2011. AR 00252-59. In four cases, the reviewers found that Plaintiff failed to meet the standard care because he did not perform thorough examinations or arrange for appropriate follow-up care for patients complaining of chest pain. AR 00253-59 ¶¶ 2(g),(x),(bb) & (tt). In an additional four cases, reviewers found that the standard of care was not met because Plaintiff did not perform clinically indicated pelvic exams. AR 00254-56 ¶¶ 2(m), (n), (v) & (y). Based on these findings, the Credentials Function proposed unanimously to restrict Plaintiff's privileges in the manner previously discussed. AR 00261. The AF/MC advised Plaintiff that he was proposing to restrict his privileges because of the credential function's findings indicated that a potential existed for Plaintiff's actions to have adverse effects on patient care and safety. AR 00262, 00269.

   Plaintiff elected to have a hearing committee review the proposed privilege restrictions. AR 00272. A live hearing was conducted on October 26, 2011. AR 00284. The hearing panel consisted of three physicians: Joseph Procreva, Jason Garner and Karl Brown. AR 00286.[3] Captain Christopher David, MD, who worked with Plaintiff at the Air Force hospital, testified on behalf of the Air Force. AR

---

[3] A fourth panel member was removed over Plaintiff's concern that she worked closely with members of the Credentials Function, and therefore there was an issue of implied bias. AR 00320-22.

00344. Dr. David testified that certain providers had expressed concern over Plaintiff's willingness to accept risk. AR 00366-67. Dr. David testified that he helped review some of the cases for the Credentials Function. AR 00350.  Dr. David also discussed that he thought several of the "discrepant" cases were problematic because Plaintiff did not adequately document his medical decision-making. AR 00372-73. Plaintiff testified on his own behalf that the paper charting system was the reason his charts may have appeared incomplete. AR00477-479. Plaintiff also testified that he disagreed that the cardiac and pelvic pain patients identified by the committee required more extensive work-ups. AR 00479-82. Plaintiff also presented Dr. Michael Lambert as an expert witness. AR 00484. Dr. Lambert testified that while he may have handled some of the cases differently himself, he believed Plaintiff was competent to practice medicine. AR 00504.

The hearing committee members reviewed the 49 "discrepant" cases and agreed that in 22 of these cases, the allegations were substantiated by the medical records. AR 01241-01252. In an additional eight cases, the panel found that the charges were "partially substantiated." *Id.* Allegations were considered partially substantiated when it appeared that the charts were incomplete or where lab results were not addressed. *See e.g.* AR 01243 ¶ (i) ("Partially Substantiated (Why): labs not addressed."). In a total of 23 of the 30 substantiated and partially substantiated cases, the panel found that the standard of care was not met. AR 01241-01252. The panel ultimately concluded that these charts showed "a pattern of incomplete charting and lack of thorough work up of potentially serious illnesses." AR 01252. On this basis, the panel recommended restricting Plaintiff's privileges for six months. *Id.* Plaintiff filed a statement of exceptions and corrections challenging the panel's findings on January 2, 2012. AR 01259-74. The MF/CC, however, upheld the panel's recommendations, directing that Plaintiff's privileges be restricted "until such time as your noted clinical deficiencies have been corrected." AR 01275.

Plaintiff then filed an appeal of this decision arguing that Plaintiff's performance was within the reasonable scope of the standard of care, that all of his decisions were evidence-based, and that members of the hearing panel did not have sufficient experience to evaluate his actions. AR 01276-01278. In

rebuttal, the MF/CC responded that Plaintiff's failure to meet the standard of care in 22 cases out of 192 was "egregious" and that Plaintiff did not object to the final composition of the panel at voir dire. AR 01280-81. Members of the MPRB reviewed the record and agreed with the findings of the Hearing Panel because "significant issues existed with [Plaintiff's] documentation, as well as his management of certain patients." AR 01285. The MPRB was specifically concerned with Plaintiff's handling of patients presenting with chest and pelvic pain. *Id.* The Surgeon General concurred with the MPRB's recommendations and made a final decision to restrict Plaintiff's privileges. AR 01287. Because this was an "adverse action," it was reported to the National Practitioner Data Bank. AR 01287, 01297.

## IV. PROCEDURAL HISTORY

Plaintiff filed his initial Complaint against the Air Force and VA on March 5, 2014. Complaint, Doc. No. 1. Plaintiff filed a First Amended Complaint (FAC) on August 14, 2014., which added the secretaries of the Air Force and VA as official-capacity defendants. FAC at ¶¶ 18-19. On October 9, 2014, this Court granted Defendants' motion to dismiss all claims against the VA and all claims against official-capacity defendants. Doc. 22. Plaintiff filed his SAC on November 6, 2014. The SAC deleted defendants and claims that had been dismissed from the FAC. Plaintiff's only remaining cause of action is that the Air Force's decision to restrict his clinical privileges should be set aside under the APA, 5 U.S.C. § 706.

Plaintiff timely filed a Motion for Judicial Review February 6, 2015. Pl.'s Mot. in Supp. of Action for Judicial Review (MJR), Doc. 33. Plaintiff filed an errata on February 9, which included a table of contents for the MJR, as well as the attorney's signature. Doc. 34. Defendant replied March 10, 2015. Opp'n to Pl.'s Req. for Relief (Opposition), Doc. 35. Plaintiff filed his reply on March 24, 2015. Pl.'s Reply in Supp. of Action for Judicial Review of Def.'s Administrative Action (Reply), Doc. 36.

On March 31, 2015 this Court issued a minute order directing Defendants to identify where certain documents were located in the record and ordered Defendants to produce an amended index that identified the location of these documents. M.O. 38. Defendants timely responded by identifying the

location of one of these documents, a medical consultant's report referred to by the MPRB. Defs.' Response to Mar. 31, 2015 M.O., Doc. 39. Defendants asserted that the other document, a legal review, is protected by attorney-client privilege, and was properly excluded from the record. *Id.* at 2-5. Defendants also stated that they "do not understand" this Court's request for an updated index. *Id.* at 5. The Court will now clarify its order. Defendants are to amend the index and add a line under the one currently providing information for "Undated Memorandum from Air Force Solicitor General Concurring in Decision" to identify that the SGHM Consultant Review is located at AR 1291-93.

## V. **INTRODUCTORY NOTE**

Plaintiff seeks judicial review of a final agency action under the APA. Because judicial review is confined to the administrative record, these cases are usually decided on summary judgment pursuant to Rule 56. Here, the parties have stipulated that there are no contested facts and that the administrative record "speaks for itself." Scheduling Order, Doc. 31 at 2. The parties also agree that the briefings currently before the court are "akin to a summary judgment motion." JSR ¶ 9. Instead of filing cross-motions for summary judgment, however, Plaintiff moved for "Judicial Review of Defendants' Administrative Action." MJR, Doc. 33. Defendants explain that parties intended to mimic "a more efficient procedure that resembles state court writ briefing." Opposition, 5 n. 1. Defendants, thus, encourage this court to treat Plaintiff's brief as a motion for summary judgment. *Id.* Defendants argue that treating Plaintiff's brief as one for summary judgment allows the court to enter judgment for either party. *Id.*

District courts may treat motions as requests for summary judgment when "the record before the court on the motion reveals the absence of any material issue of fact and the moving party is entitled to judgment as a matter of law." *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981) (citing Fed. R. Civ. P. 56). The Ninth Circuit has "long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party."

*Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014). The advisory notes to Rule 56 explain that subsection (f) authorizes both of these practices. Fed. R. Civ. P. 56, advisory committee notes ("Subdivision (f) brings into Rule 56 text a number of related procedures that have grown up in practice. . . the court may grant summary judgment for the nonmoving party; grant a motion on legal or factual grounds not raised by the parties; or consider summary judgment on its own."). The rule, however, makes clear that courts may only do this "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). In evaluating the adequacy of notice, the Ninth Circuit looks to the record to determine "whether the party against whom summary judgment was entered was fairly apprised that the court would look beyond the pleadings . . ." *Portland Retail Druggists Ass'n*, 662 F.2d at 645.

Here the Parties have agreed that the briefings currently before the court are "akin to a summary judgment motion." JSR ¶ 9. Defendants explicitly state the Parties' intention is for this Court to treat the motions as ones for summary judgment. Opposition, 5 n. 1. Plaintiff did not challenge this characterization in his reply. Therefore, this Court finds that Parties are on notice that these motions will be considered under Rule 56.

## VI. STANDARD OF DECISION

A court conducting APA judicial review may not resolve factual questions, but instead determines "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985)). This court must set aside the Air Force's Final Decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although this review is "searching and careful," the arbitrary and capricious standard is narrow, and this court cannot substitute its own judgment for that of the agency. *In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014). An agency's decision is arbitrary and capricious if it fails to consider important aspects of the issue before it, if it supports its decisions with explanations contrary to

the evidence, or if its decision is either inherently implausible or contrary to governing law. *The Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir.2005). "Findings of fact must be sustained unless they are unsupported by substantial evidence in the record as a whole." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1121 (9th Cir. 2004).

## VII. ANALYSIS

Plaintiff argues that the Air Force's decision to restrict his hospital privileges is arbitrary or capricious because there is "no evidence of mismanagement or improper care." MJR at 10. Plaintiff's arguments are based on the following theories: 1) that is unreasonable to find that his conduct fell below the standard of care if patients did not suffer adverse outcomes, 2) that Dr. David's testimony was not credible, 3) Plaintiff's failure to perform certain exams for pelvic pain and cardiac patients was reasonable in the emergency room setting, 4) the Hospital's documentation requirements were onerous given its paper records system, and 5) the hearing panel had inadequate training and knowledge to assess his clinical performance. Defendants dispute each of these assertions and argue that the Air Force's decision was based on factual findings adequately supported by evidence in the record. Opposition at 5-6.

### A. Lack of Adverse Patient Outcomes

Plaintiff argues that because the record does not reflect that any of his patients suffered adverse outcomes, criticisms of his performance are "merely differences of opinion." MJR at 10. He argues that "to actually prove that the standard of care applicable to emergency room physicians was breached, the agency would either have to present cases where the patient's condition re-presented with a worsened condition or their recovery was impaired as a result of care rendered by Dr. Goh." Reply at 3. Plaintiff provides no evidence for this standard beyond his own clinical opinion. The three members of the hearing panel and at least one clinical member of the MPRB countered that, in their judgment, the fact that patients did not re-present to the hospital with adverse outcomes did not mean that Plaintiff met the standard of care. AR 01285. They explain, in detail, the ways they believed standards of care were not

9

met. AR 001241-52. The MF/CC also argued in a written rebuttal to Plaintiff's appeal that the "[s]tandard of care is consistently determined based on the opinion of other providers with similar education and training, and not by the number of patients who are forced to seek follow-up treatment due to an erroneous diagnosis." AR 01281. Moreover, Plaintiff's argument relies on the logical fallacy that simply because one never becomes aware of something necessarily means that the thing does not exist. The Air Force's rejection of this theory based on common sense and the clinical judgment of at least four practicing physician-reviewers was not arbitrary or capricious.

**B.    Credibility of Dr. David**

Plaintiff argues that it was error for the Air Force to rely on Dr. David's testimony in any way for a number of reasons. MJR at 11-13. He argues that Dr. David a) misdiagnosed the event that triggered the investigation, b) had only two years of post-residency experience, c) articulated an incorrect standard of care, and d) harbored a personal bias against Plaintiff. For these reasons, Plaintiff argues, decision-makers should have credited the Plaintiff's testimony and the expert testimony offered by Plaintiff over that of Dr. David. MJR at 6, 17-20.

Plaintiff cites to *Meier v. Colvin (Meier II),* 727 F.3d 867, 872 (9th Cir. 2013), for the theory that a reviewing court may reverse an agency's final decision when it fails to cite specific and legitimate reasons for rejecting one witness's opinion in favor of another. Reply at 5. The plaintiff in *Meier* appealed a district court's affirmation of an administrative law judge's (ALJ) decision to deny him social security disability benefits. *Meier v. Astrue (Meier I)*, 404 F. App'x 150, 151 (9th Cir. 2010).[4] The Ninth Circuit overturned this decision, in part, because the ALJ rejected the testimony of the plaintiff's treating physician without providing specific and legitimate reasons. *Id.* ("The primary basis for discounting the evidence was that Meier engaged in activities that did not support his testimony or the

---

[4] Plaintiff cites to *Meier II* in his brief, but this proceeding dealt with whether or not the plaintiff was entitled to attorneys' fees under the Equal Access to Justice Act. 727 F.3d at 369. *Meier I* is the decision that dealt with whether or not the ALJ erred in discounting a treating physician's testimony. 404 F. App'x at 151. However, in *Meier II,* the Ninth Circuit expounds on its brief, unpublished opinion in *Meier I*. Thus, both cases are referenced here.

conclusion of Dr. Margaris. This basis was flawed."). However, the Ninth Circuit also held that the ALJ and district court had applied the wrong disability standard to the case. *Id.* at 151-152. (The plaintiff did not need to show that he was "utterly incapacitated," rather he must show he is unable to spend "a substantial part of his day in an activity that is transferable to the workplace."). It was error for the ALJ to use an incorrect legal standard as a basis for rejecting certain evidence. *Id.* at 152.

As discussed above, Air Force rules do not set a standard at which a provider's privileges may be revoked. This decision is made at the discretion of the MF/CC or Surgeon General. Thus, the holding in *Meier I* does not translate to this case. Under the APA, "[a] court is not empowered to substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "Rather, if upon review of the entire record of that proceeding there is found substantial evidence to support the Secretary's decision, that decision must be affirmed." *Henrikson v. Udall*, 350 F.2d 949, 950 (9th Cir. 1965) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951); *Foster v. Seaton*, 271 F.2d 836, 838-39 (1959)). Plaintiff had the opportunity to testify on his behalf and put on an expert witness. The Air Force had the opportunity to put on Dr. David as a witness most familiar with the findings of the Credentials Function proceedings, and Plaintiff's general reputation and clinical conduct. Plaintiff has not offered any valid legal basis for finding that Dr. David's testimony was impermissible or that this Court could substitute its judgment for the Air Force's with respect to Dr. David's credibility.

## C.     Whether the MPRB Properly "Rejected" Witness Testimony

Plaintiff argues that decision-makers erred by not articulating specific and legitimate reasons for favoring the position advocated by Dr. David over his and his expert's opinions. MJR at 5. As discussed above, there is no requirement for a decision-maker to explain why he credited certain testimony, if there is substantial evidence supporting that decision. Thus, this Court will only set aside the Air Force's decision if it finds that the AF/SG did not have substantial evidence on which to base his opinion.

The four members of the MPRB explained that they unanimously recommended restricting

Plaintiff's privileges. AR 1286. This recommendation was based on their finding that the record showed "an absence of exams and documentation, incomplete charts, and no-follow-up," which amounted to a "pattern of substandard care." *Id.* These recommendations were adopted in full by the AF/SG. AR 01287. In coming to this decision, the MPRB asked yet another consultant to review an undisclosed number of "available" charts. AR 01285. This reviewer agreed that "there is adequate evidence of concerns with Dr. Goh's care and documentation to justify the actions taken at [the Hospital]." AR 01292.

Plaintiff argued before the Hearing Panel and in writing to the MPRB that his documentation practices were acceptable given the state of the Hospital's charting system, and that his treatment of cardiac and pelvic pain patients met the standard of care, even though his critics faulted him for failing to administer certain diagnostic exams. AR 00479-80. He believed that his care was thorough and that the additional exams advocated for by Dr. David and others were unnecessary in the context of emergency room visits. *Id.* The MRPB rejected these arguments on the basis that these diagnostic tests were necessary to rule out alternative diagnoses. AR 01285. Moreover, the MPRB referred to testimony of Plaintiff's own expert witness, saying that even he expressed concern over the state of Plaintiff's charts and his approach. *Id.* As discussed, these findings "must be sustained unless they are unsupported by substantial evidence in the record as a whole." *Calmat*, 364 F.3d at 1121. This Court does not agree with Plaintiff that the findings of the Credentials Function and the Hearing Panel, along with Dr. David's testimony, the MPRB consultant's review, and the findings of the MPRB itself do not amount to substantial evidence.

D.       **Whether Hospital Protocols Prevented Plaintiff From Meeting the Standard of Care**

Plaintiff argues that Air Force's finding that Plaintiff's documentation was inadequate must be interpreted as mandating a policy that "everything, including each of his impressions, must be indicated in the medical records." MJR at 15. Plaintiff, however, cites to no evidence that such a high standard was actually imposed on him. It is clear from the record that Plaintiff was penalized because his medical

records did not show that he sufficiently evaluated alternative etiologies, not because he failed to document "each of his impressions." The MPRB rejected Plaintiff's assertion that it is unnecessary to document medical decision making in the absence of a specific written directive, finding this statement "contrary to safe medical practices." AR 01285. The MPRB based this conclusion on the premise that "[e]very physician is taught the importance of complete documentation. This is especially reinforced through emergency medicine residency training because documentation clarifies to other members of the health care team what the treating provider's working diagnosis and treatment intentions were at the time of the encounter." *Id.* This Court cannot agree with Plaintiff that the findings of the Credentials Function and the Hearing Panel, along with Dr. David's testimony, the MPRB consultant's review, and the findings of the MPRB itself do not amount to substantial evidence supporting the AF/SG's decision to penalize Plaintiff for his documentation practices.

### E. <u>Competency of Hearing Panel</u>

Plaintiff argues that the Hearing Panel members lacked sufficient knowledge to determine if Plaintiff breached the standard of care. MJR at 20-21. Defendant responds first, that the composition of the hearing panel complies with Air Force instructions and, second that Plaintiff did not challenge inclusion of the three members at the time of the hearing. Opposition at 9.

Plaintiff was represented by counsel at his hearing. AR 00295 His counsel questioned each of the four original hearing panel members at length. AR 00295-322. Counsel advocated successfully for the removal of one panel member, based on her association with members of the Credentials Function that originally reviewed Plaintiff's charts. AR 00311-315, 320-322. Counsel did not challenge the inclusion of any other member of the hearing panel. AR 00322. It is disingenuous for Plaintiff to challenge their qualifications only once they have ruled against him.

Defendants also point out that Plaintiff does not actually claim that the hearing panel did not conform to Air Force standards. Opposition at 9. These standards require that only one member of the panel be a professional peer with similar training and experience. AR 00140. As Defendants point out,

this standard was met by the inclusion of a board-certified emergency physician with over ten years of experience. Opposition at 9.

Moreover, the findings of the hearing panel do not constitute the Air Force's final decision. Rather, their findings are evidence to be evaluated by the MF/CC and, ultimately, the Surgeon General. Plaintiff has not offered any valid legal basis for finding that the hearing panel's findings should not have been admitted as evidence or that this Court could substitute its judgment for the Air Force's with respect to how this evidence should have been weighed.

### F. Whether the Disciplinary Measures Were Unfairly Harsh

Plaintiff argues that the decision to restrict his privileges was arbitrary and capricious because it was unreasonably harsh. MJR at 23. However, under the Air Force's rules, senior level officers have wide latitude to restrict a provider's privileges. AR 00143. While an MTF/CC reviews recommendations presented to him by a fact-finding hearing panel, as well as the evidence in the record, he is not bound by the panel's recommendations. *Id.* Indeed the only requirement imposed on the MTF/CC is that he must provide written notification of the final decision and provide reasons for the final action. *Id.* At the administrative appeals level, the MPRB acts in a fact-finding capacity, and the AF/SG has the discretion to make whatever final action he deems fit based on their recommendations. AR 00144.

Fact-finders involved in the process also have a significant amount of discretion in evaluating whether they believe that a provider's conduct warrants a restriction, reduction, or removal of privileges. Members of the Credentials Function are tasked with evaluating whether "there are clinical practice deficits that are or may affect patient safety." AR 00135. For hearing panel members, "[t]he recommended action must be made by majority vote and in good faith, is required to be based upon prevailing professional standards and on findings and conclusions from the evidence." AR 00142. The MPRB is similarly free to "review[s] the clinical evidence, legal due process of the case, and the provider's appeal" prior to making a final action recommendation to the AF/SG. AR 00144. In this context, the findings and recommendations of the Credentials Function, hearing panel, and MPRB serve

as evidence that first the MF/CC and then the Surgeon General evaluate when making decisions regarding a provider's privileges. This court cannot agree that the findings of the Credentials Function and the Hearing Panel, along with the testimony of Dr. David, the review by the MPRB's consultant, and the findings of the MPRB itself do not provide substantial evidence for the Air Force to restrict Dr. David's privileges.

## VIII. CONCLUSION AND ORDER

For the reasons discussed above, the Court finds that Plaintiff has failed to show that the Air Force's decision to restrict his clinical privileges violated the APA, 5 U.S.C. § 706(2)(A). Accordingly, in light of the fact that Plaintiff's motion for "Judicial Review of Defendants' Administrative Action" and Defendants' opposition may be construed as cross-motions for summary judgment, Plaintiff's motion is DENIED and Defendant's motion is GRANTED. The Court UPHOLDS the Air Force's decision and directs the clerk of Court to enter judgment in Defendants' favor.

To provide for greater clarity on appeal, Defendants are instructed to amend the index within three days of this order and add a line under the one currently providing information for "Undated Memorandum from Air Force Solicitor General Concurring in Decision" to identify that the SGHM Consultant Review is located at AR 1291-93.

IT IS SO ORDERED.

Dated: **April 8, 2015**  /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE